**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ISMAEL ADAME-NUNEZ** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-3080** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **WARDEN, PIKE COUNTY** | : | |
| **CORRECTIONAL FACILITY** | : | |
| | : | |
| **Respondent.** | : | |

FILED
SCRANTON
NOV 02 2026
PER DJ
DEPUTY CLERK

**MEMORANDUM OPINION**

Petitioner Ismael Adame-Nunez ("Petitioner"), a citizen of Mexico, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Respondent opposes the petition, arguing that "[b]ecause Petitioner is subject to a final reinstated removal order and cannot demonstrate that there is no reasonable likelihood that he will be removed in the reasonably foreseeable future, the petition should be denied." (Doc. 7 at 2).

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Petitioner unlawfully entered the United States in 2018 near Laredo, Texas and was arrested by DHS. (Doc. 7-3 at 2). He was placed in expedited removal proceedings and removed from the United States on August 30, 2018. (Doc. 7-4 at 2).

On July 10, 2026, ICE arrested Petitioner in Luzerne County and served him with a Notice of Intent to Reinstate his prior order of removal. (Docs. 7-2 at 3, 7-3 at 2). On August 12, 2026, Petitioner received notice that DHS denied his request for withholding of

removal. (Doc. 7 at 4). On August 21, 2026, an Immigration Judge held a hearing to review DHS's determination and, after receiving testimony, concluded that Petitioner had not satisfied his burden of demonstrating that he is entitled to any relief from removal. (Doc. 7-5).

Petitioner filed a motion to stay removal with the United States Court of Appeals for the Third Circuit and on August 28, 2026, the Third Circuit issued an Order temporarily granting his stay of removal. (Doc. 7-6 at 2). As reflected on the Third Circuit docket, that temporary stay was vacated on October 2, 2026. *Adame-Nunez v. Att'y Gen. U.S.*, 26-3177 (Docs. 17, 19). On October 26, 2026, the Court received a letter from Petitioner's wife informing it that Petitioner was transferred from the Pike County Correctional Facility to the Adams County Correctional Center in Natchez, Mississippi. (Doc. 9).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration

detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III. ANALYSIS

Respondent has detained Petitioner pursuant to 8 U.S.C. § 1231(a)(5) since July 10, 2026.[1] Section 1231(a) "governs the detention, release, and removal of individuals ordered removed." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day removal period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). "The removal period begins on the latest of three dates: (1) the date the order of removal becomes administratively final, (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Id.* (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." *Id.*

---

1 "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5).

Here, Petitioner's 2018 removal order was reinstated on July 10, 2026, and his 90-day removal period in which he must be mandatorily detained under § 1231 has now run.[2] In *Zadvydas* the Supreme Court considered the statutory language in § 1231(a)(6) and found that "permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). To avoid those concerns, the Supreme Court interpreted § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also Clark v. Martinez*, 543 U.S. 371, 384 (2005) (clarifying *Zadvydas* and noting that the "the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal.*") (emphasis added). Detention for up to six months after a final order of removal is reinstated is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.

The expiration of the six-month period "does not mean that every alien not removed must be released after six months." *Id.* Rather, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Accordingly, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably

---

2 "In the context of reinstated removal orders, the 90-day removal period begins to run on the date when petitioner's prior removal order is reinstated." *Yanzaguano-Parra v. Soto*, 2026 WL 3174100, at *2 (D.N.J. Oct. 23, 2026) (citation modified).

foreseeable future."[3] *Id.* However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id.* at 699.

Here, Petitioner's removal order became final in 2018 and his presumptively reasonable six-month period of detention under § 1231(a) has not yet run. *Santos-Cruz v. Hoover*, 2026 WL 3182330, at *3 (M.D. Pa. Oct. 23, 2026) And Petitioner does not provide any reasons, let alone good reasons, to believe that there is no significant likelihood of his removal to Mexico in the reasonably foreseeable future. Accordingly, Petitioner cannot satisfy his burden under *Zadvydas* at this time and his petition will be denied. *See id.* (denying petition when petitioner is properly detained under § 1231(a)(5) and "fails to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); *see also Nahom v. Lowe*, 2026 WL 3205876, at *4 (M.D. Pa. Oct. 26, 2026) (holding that petitioner failed to satisfy his *Zadvydas* burden).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge

[3] "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Alexander v. Att'y Gen. United States.*, 495 Fed. App'x 274, 276-77 (3d Cir. 2012) (nonprecedential).